## FRY *a.* BENNETT.

*New York Superior Court; General Term, June,* 1858.

APPEAL.—NOTICE OF JUDGMENT.—ENLARGEMENT OF TIME.

The provision of section 332 of the Code—requiring appeals to be taken within thirty days after written notice of the judgment or order shall have been given to the party appealing—contemplates a formal written notice, which should come in general only from the attorney of the adverse party, should be actually served on the attorney of the party who makes appeal, and should be such as to apprise him of the whole subject-matter.

Oral notice, or procuring a copy of the order entered, does not amount to a notice which will set in motion the time to appeal.

---

The court have no power to extend the time within which an appeal may be taken. (HOFFMAN, J., dissented.)

That which they cannot do directly they cannot do indirectly, under color of allowing an amendment in the notice.

When a notice of appeal from a judgment has been given, in all respects perfect, and containing nothing more, the court may not allow an amendment so as to make the appeal also an appeal from an order denying a new trial, after the time for appealing from such order has expired, and so in effect allow a new appeal.

*It seems,* that a notice of appeal, when actually given in due season, if there be particular defects therein which do not destroy its substantial character, may be amended.

An appeal from a judgment does not bring under review an order denying a motion for a new trial, but an appeal from such order is necessary for that purpose.

Although a respondent who comes before the court on appeal with the statement at the outset that the cause comes up on an appeal from the judgment, yet, besides discussing numerous exceptions proper to be considered, argues the question whether the damages are excessive or the like, or permits the adverse party to argue, among others, similar questions, which are appropriate only to an appeal from an order denying a new trial, he does not thereby waive the objection that there was no notice of appeal from such order.

Appeal from an order denying a motion to amend a notice of appeal, and Motion to dismiss an appeal from an order denying a motion for a new trial.

On the trial of this action the plaintiff had a verdict, and the defendant moved at a special term for a new trial. His motion was, on the 13th day of April, 1857, denied by the justice at special term. The facts respecting the denial of the motion and

entry of the order, as they were disclosed by the affidavits, were briefly as follows:

On the 13th of April the defendant's motion for a new trial was brought on at special term, and the motion was denied *pro forma*, with a view to having the motion argued at general term. The counsel for defendant thereupon drew up an order denying the motion, and procured the signature of the judge. The plaintiff's counsel made a copy of this order, and had it certified by the clerk as a copy, and thereupon the counsel and attorneys left the court without entering or filing the order. The plaintiff's attorney having made another copy of the order, procured it to be signed by the judge, and this duplicate original was filed with the clerk next day. The affidavit of the plaintiff's attorney stated that the defendant's attorney, who was present in court on the signature of the first original, took that original, and that the defendant's attorney relied on such possession as being, under the circumstances, a service; but the defendant's attorney denied, in his affidavit, that the original was ever entered, or that he ever took a copy thereof.

The defendant's attorney, desirous to appeal both from the judgment and from the order denying a new trial, filed and served a notice of appeal. In terms, however, this notice was only of appeal from the *judgment*. Upon argument at the general term, it was first observed that the notice was such, and a question arose as to whether there was really any appeal pending from the order denying a new trial.

The defendant's attorney thereupon moved at special term for an order amending his notice of appeal from the judgment by inserting the words, "and from the order denying the motion for a new trial." This motion was denied. The defendant appealed from the order denying this motion, and also served a notice of appeal from the order denying the motion for a new trial.

The plaintiff thereupon moved to dismiss the latter appeal, upon the ground that no appeal from the order denying the motion for a new trial was taken within thirty days after the defendant's attorney had written notice of that order.

The defendant's appeal from the order denying his motion to amend the notice, and the defendant's motion to dismiss that appeal, were brought on together.

*D. D. Field*, *B. Galbraith*, and *John J. Townsend*, for the defendant.

*F. R. Sherman*, for the plaintiff.

I. Motion to dismiss the defendant's appeal from the order denying a new trial.

By THE COURT.*—WOODRUFF, J.—That provision of the Code of Procedure which limits the time within which an appeal must be taken is wisely enacted, in order that litigation may be terminated. That as other statutes prescribe the time within which causes of action must be prosecuted, and still others provide compulsory means by which the progress of the controversy may by either party be hastened to judgment, so that by means of this limitation further litigation by appeal from court to court may be finally terminated.

And in providing this last means of determining the matter finally, and as the case may be debarring the unsuccessful litigant of any review or reconsideration of the matters which have once been adjudged against him, the framers of the law have, we think, had a twofold purpose before their minds : *first*, to make the condition of the limitation so plain that there should be no danger of misconstruction or misapprehension ; and *second*, to place it in the power of the prevailing party to set the time running within which an appeal shall be taken whenever he may choose.

By this means each party is placed in a situation to know distinctly and clearly what is the actual state of the controversy in this respect.

The losing party will not be taken at unawares, and be deprived of a right of review, and the prevailing party will know precisely when the right of review is waived or lost.

It is with this twofold purpose, we think, that it is provided by section 332 of the Code of Procedure, that the appeal from the special to the general term must be taken within thirty days after *written notice* of the judgment or order *shall have been given* to the party appealing.

Upon this we observe, that in order that the thirty days shall

---

* Present, BOSWORTH, HOFFMAN, SLOSSON, WOODRUFF, and PIERREPONT, JJ.

begin to run, it is not enough that the party have notice of the order. That was conceded on the argument of the present motion. No oral communication, therefore, is sufficient. No presence in court, and hearing the decision announced, nor the order of judgment declared by the court, is sufficient. He must have *written* notice.

Again, we deem it equally clear that the written notice which is to avail to limit the time must be such as to apprise him fully of the whole substance, if not the very details of the order or judgment given or made against him. Without this he is not in a situation to determine whether he will appeal or not. He can, without such notice, make no election.

Further, the notice he receives must come to him from an authentic source, else he is in no manner bound to rely upon it, or take any action founded thereon. The attorney for the adverse party is the person to whom he is to look for all notices in the progress of the cause, and he is not bound to receive or regard any others, unless it be such as contemplate the displacement of such attorney, or the employment of a new attorney.

The notice is to be *given to him*, which, in our judgment, plainly means that it shall be served upon him.

All this is simple—easily understood. It enables the party to see and apprehend his precise condition in reference to the subject. And on the other hand, it leaves the prevailing party at full liberty to set the thirty days a running when he pleases, or to acquiesce in or allow an unlimited time within which to appeal if he chooses to do so.

We think that the term *notice*, in this statute, has a meaning in some degree technical; that in its connection it imports something written and *given* to the party for the very purpose of apprising him of the judgment or order; and that it was intended to mean this, in order to prevent the uncertainty and conflict which would result from allowing the limitation to depend on the question whether the party had ever *seen* the order of judgment or a copy thereof; or upon any similar questions.

It is unnecessary for us to say, and we do not intend here to say whether, if the party prevailing issue execution, and that execution be exhibited to the other party by the sheriff and is levied, that that would or would not be a sufficient notice. Nor whether, if the party prevailing actually serve upon the other a

copy of the order or judgment, duly certified by the clerk of the court, without further authentication, that would or would not be a sufficient notice.

But we do intend to hold, that unless after the order is made and judgment rendered, or entered, or filed, and constructively entered, so as to become a part of the record or minutes of the court, he has some written notification thereof by act of the prevailing party or his attorney, his time to appeal continues without limitation. He may acquire knowledge of the order; he may examine it on the files of the court, or on its records, or procure a copy of it from the clerk. For many purposes this and any actual knowledge of the order or judgment will be notice, but as a limitation of the time to appeal, knowledge so acquired will be wholly inoperative. There is nothing novel in this view of the subject.

By the provisions of the Revised Statutes relating to appeals to and from the Court of Chancery, different rules were made in relation to different appeals. Some must be taken within a certain time after the decree was entered in the minutes of the court—*e. g.*, appeal from vice-chancellor to chancellor, from a final decree. (2 *Rev. Stats.*, 278, § 98.) Another from the time the decree shall have been *recorded*—*e. g.*, from a decree of surrogate on final settlement of accounts. (2 *Rev. Stats.*, 610, § 105.) Others from the time the order, sentence, or decree shall have been made—*e. g.*, appeals from surrogates not specially provided for. (2 *Rev. Stats.*, 610, § 107.)

Appeals from final decrees of the Court of Chancery to Court of Errors from the time of enrolment (2 *Rev. Stats.*, 605, § 78); from an interlocutory order of a vice-chancellor within fifteen days after the notice of such order (2 *Rev. Stats.*, 178, § 98); and what is especially applicable to the point under consideration, all appeals from any other order or decree of the Court of Chancery (except final decrees) to the Court of Errors, must be made within " fifteen days after notice thereof *shall have been given* to the party against whom such order or decree shall be made, or to his solicitors." (2 *Rev. Stats.*, 605, § 79.)

The construction of this language came under consideration in the Court for the Correction of Errors, in Jenkins *a.* Weld (14 *Wend.*, 545); and we have done little more than borrow the language of Chief-justice Savage, in giving the opinion in that

case. "It is notice to be given," &c. "This implies a positive act of the party in whose favor the decree is made." \* \* \* "It is clear to my mind that the Legislature intended a regular formal written notice." (See also *Hoffman's Ch. Pr.*, 20 ; Tyler *a.* Simmons, 6 *Paige*, 132 ; The People *à.* Backus, 9 *Ib.*, 607.)

The application of these views to the motion before us is obvious.

The motion to dismiss the appeal must be denied.

II. Appeal from order denying the defendant's application to amend his notice of appeal.

BY THE COURT.—WOODRUFF, J.—The court have no power to extend the time within which an appeal may be taken.

The court are not authorized to do indirectly, under color of amendment, what they may not do directly.

A notice of an appeal from an order, when actually given in due season, if there be particular defects therein which do not destroy its substantial character, may be amended. And so of an appeal from a judgment.

But where a notice of an appeal from a judgment has been given, in all respects perfect, and containing nothing more, the court may not allow an amendment, so as to make the appeal also an appeal from an order denying a new trial, after the time for appealing from such order has expired, and so, in substance and effect, allow a new appeal.

An appeal from a judgment does not bring before the general term for review an order denying a previous motion for a new trial.

To bring such an order under review, an appeal from the order is necessary.

These conclusions embraced in the opinions given by me at the special term, on denying the motion upon which the present appeal arises, we now affirm, (Mr. Justice Hoffman, however, dissenting from our conclusion that the time to appeal to the general term cannot be extended.) It is not deemed necessary here to refer to the reasons which were there given for the purpose of either repeating or reviewing them.

But one ground for allowing an amendment in this case, or in

the alternative permitting the defendant to file and serve a notice of appeal *nunc pro tunc*, is now urged upon our attention, which, although the facts relied upon appear on the papers, was not prominently presented at special term, nor discussed in the opinions there given.

It is insisted by the defendant that the omission to file or serve a notice of appeal has been waived, in such wise that the plaintiff cannot now allege the defect, and that it is therefore proper to allow either an amendment or the filing of the notice *nunc pro tunc*, to the end that the record may conform to the actual condition of the cause before the court. That the general term has actual jurisdiction of the appeal *as an appeal from the order denying a new trial*, by the appearance of the respondent, and arguing the appeal, not only as an appeal from the judgment, but also *as an appeal from the order*.

Whether, when *no appeal* has in fact been taken, but the parties nevertheless appear before the general term, present a case purporting to be a case or exceptions on appeal, and argue the matters arising thereon, avowedly and unequivocally as an appeal, they should not be held concluded thereby, we do not think it necessary in this case to decide. There are strong reasons for holding that an appearance on appeal and an actual argument and submission of the questions arising upon the case to the court, without raising the objection that no appeal has been taken, is a submission to the jurisdiction of the general term, and operate to confer jurisdiction as fully as if a formal appeal had been taken by filing and serving written notice thereof.

It is, however, not too much to say that the assertion of jurisdiction by the general term, in the absence of any actual appeal, should proceed upon acts of the respondent, unequivocal in their character, and either indicating an intentional assent thereto, or being at least plainly inconsistent with a claim that no such appeal is pending.

The allegations on the part of the defendant here, upon which it is claimed that there has been a waiver of an actual notice of appeal and a submission to the jurisdiction of the court, are mainly as follows:

That there was no argument of the motion for a new trial at the special term, but that there was an understanding and agreement between the attorneys and counsel for the parties, that the

motion should be denied *pro forma*, and the whole matter considered at the general term.

That the case made herein and used at the hearing in the general term, contained all the evidence in the cause, and was thus prepared with a view to the discussion of all questions which the defendant's counsel might wish to raise on a motion for a new trial.

That the counsel for the parties respectively did insert in their points used in the argument on the appeal from the judgment, grounds for granting a new trial, which could with propriety be only urged on such a motion, and could not properly be considered on an appeal from the judgment only.

In relation to the first of the defendant's allegations above, in substance recited, the attorney for the plaintiff, by his affidavit, denies that there was any understanding or agreement of any kind between the parties than what is contained in the order itself, which denies the new trial. That order, after reciting the motion, and the grounds on which it was moved, denies the motion as " upon hearing counsel," and gives to the plaintiff liberty to perfect his judgment. It then provides, that if the defendant appeal *from the judgment* within thirty days, such appeal shall operate as a stay of proceedings on such judgment pending the appeal. This order, if it throws any light upon this subject at all, indicates rather that no intent to pursue the matter as a motion for a new trial was entertained; and the defendant's attorney states in his affidavits that the order was prepared by the defendant's counsel himself. So far as the order suggests any thing, it is that an appeal from the judgment only was then contemplated.

And in this direct conflict of affidavits we do not find ourselves called upon to say, that it is clearly shown that there was an agreement or understanding, such as is alleged on the one hand and denied on the other.

The case used on the argument of the appeal, no doubt contained all the evidence taken on the trial—that is not denied. No doubt the case as prepared for the purposes of the motion for a new trial was printed, without alteration, for use on the appeal to the general term; but when we recollect that, however inconvenient and improper, it is a very common practice with a large portion of the attorneys at this bar to present cases on

appeal from the judgment in the same form as here exhibited; and more especially when we observe that there are in this case eighty-two exceptions, to the proper understanding and consideration of many of which large portions of the testimony were essential; we think no great weight can be given to the circumstance that all the evidence was printed and furnished to the court on the argument of the appeal.

The remaining consideration is, that the counsel presented points on both sides which could only be properly argued on a motion for a new trial. On the part of the appellant, out of forty-three points presented, three are found of this description. On the part of the respondent one is found, to wit, that the damages are not excessive.

. But it is to be observed that in the opening statement of the case, as printed on his points, the respondent's counsel states explicitly that the cause " now comes before the court *upon a case upon an appeal from the judgment.*"

On the other hand, it is quite clear that the respondent nowhere suggests in his printed points, that the questions whether the verdict is against evidence, or whether the damages are excessive, were not open to discussion on the appeal.

It seems to us, upon an examination of the points, in a high degree probable, if not quite clear, that the parties both supposed that all the points presented might properly be discussed on the appeal there under argument.

But we are not prepared to establish deliberately by precedent, that if on an argument of an appeal from a judgment, a point is discussed without objection, which is not raised thereby, the appeal shall be thereby deemed modified.

Or that if a respondent's counsel places on his own points one in answer to the appellant which is only pertinent to a motion for a new trial, that he thereby consents that the appeal be deemed converted into an appeal from an order denying such a motion.

We know that such mistakes, usually founded in an erroneous apprehension on the subject, and sometimes from uncertainty in the mind of counsel as to what questions the court will feel at liberty to consider on an appeal from the judgment, are of frequent occurrence. Probably not a term has passed since the Code of Procedure was adopted, in which more than one exam-

ple of this description has not been exhibited. And when the court have had the notice of appeal before them, it has been very common upon receiving the printed points to call the attention of counsel to the distinction, and to pass over all points which are not addressed to the exceptions taken on the trial of the cause, or to the judgment rendered.

Upon a review of the affidavits submitted, and on examination of the points used, it seems to us quite probable that the counsel on the part of the appellant intended to raise by the appeal, the question whether the verdict was against evidence, and whether the damages were excessive; and hardly less probable that the respondent's counsel supposed that those questions might properly be considered on an appeal from the judgment. But it is here to be noticed, that there was here an actual appeal pending—that was an appeal from the judgment, and not an appeal from an order denying a new trial. The appearance of the respondent was, in fact, an appearance to answer to the appeal which had in truth been taken. Appearance—noticing the appeal for argument—and appearing in court to argue—and actually arguing the appeal,—all these, or any of them, neither expressly nor impliedly admitted that any other appeal in the cause was pending than an appeal from the judgment, nor gave the court jurisdiction of any other appeal. This is by no means the case above referred to, in which an appearance when no formal appeal has been taken—noticing it for argument—appearing in court, and actually and professedly arguing the matter as an appeal, it is suggested, might be deemed a waiver of notice of appeal.

But in the circumstances of this case the question comes down to the naked inquiry, whether if a respondent comes into court, with the statement at the outset that the cause comes before the court on an appeal from the judgment, and yet besides discussing numerous exceptions that are properly to be considered, argues a question whether the damages are excessive, or the like, or permits the adverse party to argue, among others, similar questions, he is to be deemed thereby to waive any notice of appeal from the order denying a new trial, and to give the court jurisdiction to reverse that order.

We do not not feel at liberty so to hold.

The order appealed from must be affirmed.

HOFFMAN, J. (dissenting).—I fully concur in the denial of the motion to dismiss the appeal taken on the 25th day of May, 1858, from the order of the 13th day of April, 1857, denying a new trial.

But the decision on the appeal from the order of special term, made in May, 1858, involves the question whether the court has any power to extend the time for taking an appeal from an order or judgment, or to give liberty to take it after the time prescribed in the Code has expired.

Upon this question I am compelled to differ from my brethren, and this is one of the few cases in which a deep-rooted opinion upon a point of great and permanent practical consequence appears to demand the expression of that dissent.

I do not consider, and I believe that it is not claimed, that the opinion expressed in Humphrey *a.* Chamberlain (1 *Kern.*, 274) controls the question. The appeal there was dismissed because it was from an order not appealable. The question was not raised. Section 174 of the Code was not noticed: the 405th and 322d were alone referred to.

The reasons of my dissent are embodied in the following propositions:

*First.* The Code has abolished writs of error, and substituted what is termed an appeal, as the method of reviewing orders and judgments (§ 323). I think that the practice upon appeals in equity cases, rather than that upon writs of error in common law actions, is to supply the rule of decision where the Code is silent (§ 469). Either this is the doctrine, or it is, that when the action is a common-law action, the rules upon writs of error shall control; and when it is an equity suit, those upon appeal, as formerly known, shall govern.

*Second.* We find one great and important principle prevailing, both as to writs of error and appeals. Writs of error were, at the common-law matter of absolute right in civil cases, and could be brought at any period, however remote. Appeals by the Civil, the Ecclesiastical, the Admiralty, the law of the Court of Chancery, and that of the House of Lords, were equally of absolute right, and equally unfettered by time. Positive statutes and positive rules were necessary to restrict the exercise of this right within definite periods, or to impose conditions upon it.

As to writs of error, there was no limitation before the statute of Wm. III., c. 14. The preamble to that act recognizes the law " that ancient judgments were reversible at any time without restriction or limitation." It provided a remedy by limiting them to twenty years. Our own statute of 1813 (*Rev. Stats.*, 1813, 134, § 9) reduced the period to five years. The Revised Statutes of 1830 abridged the time to two years (2 *Rev. Stats.*, 595, § 21). In the English act, and in our own statute of 1830, the exceptions of infancy, coverture, and some others, were contained, and provided for the period after the disability was removed. (11 *Wend.*, 526.)

*Third.* In the Court of Chancery, appeals from the decree of the Master of the Rolls were to be taken within a month, by order of court of 1725. (*Beames' Orders*, 334, 338.) This order fell into disuse. Appeals of this nature being more strictly rehearings, were taken after a much greater length of time. (1 *Daniel*, 36; 13 *Ves.*, 456.) The rule seems to have been, that until a decree was enrolled, it was open to a rehearing. (1 *Daniels' Pr.*, 1347, and cases.)

By the order of the 7th day of August, 1852, one of those resulting from the great statutory amendments of the practice, the subject was fully regulated, and the periods for appeals and rehearings prescribed. By the sixth section of the order, the lord-chancellor, either sitting alone, or with the lord justices, or one of them, might, whenever the peculiar circumstances of the case appeared to make it just and expedient, enlarge the periods before appointed for a rehearing, appeals, or enrolment. (*Headlam's Ch. R., Acts, &c.*, London, 1853.)

*Fourth.* Appeals to the House of Lords were regulated by a standing order of March 24th, 1725. No petition of appeal was to be received after five years had expired from the signing and enrolling of the decree, and the end of fourteen days next ensuing such five years, unless the person be an infant, feme covert, non compos, imprisoned, or out of the kingdom. Then within five years after the disability should cease. (Stated at length, 2 *Fowler's Exch. Pr.*, 246; *Palmer's Pr., House of Lords*.)

An order of the House, made in 1829, reduced the period of appeals to two years; and as to the exceptions, it provided that in no case should an appeal be allowed where the excuse was

absence merely, after five years from enrolment. (1 *Daniels' Pr.*, 1357.)

An appeal from subsequent orders, brought within five years from their date, saved an appeal from the decree brought after five years had elapsed.

Where a decree had not been enrolled, the House of Lords acted upon the equity of the statute of Wm. III., and dismissed an appeal which was brought twenty years after decree pronounced, although enrolled within five years. (Edwards *a.* Carroll, 5 *Bro. P. C.*, 466 ; Smyth *a.* Clay, 6 *Ib.*, 395, Dublin edition.)

*Fifth.* Appeals in spiritual causes were regulated by the famous statute of 24 Henry VIII., cap. 12, prohibiting appeals to the See of Rome. From a sentence the appeal was to be taken in fifteen days, and from an interlocutory order, within ten. (*Statutes at Large*, vol. 2, p. 177. See, also, *Floyer's Proctor's Pr.*, p. 31.)

*Sixth.* In admiralty I need only refer to Brown's Admiralty Practice, to the Act of Congress of 1803 (ch. 40, §§ 2 and 4), and to Wiscort *a.* Daneley (3 *Dall.*, 327). The principle is found that appeals are of civil law origin, and the limitation to five years was prescribed for the tribunals of the United States.

*Seventh.* Appeals in equity cases were regulated by the act of 1813 (1 *Rev. Stats.*, 34, § 9), adopted into the Revised Statutes of 1830. (2 *Rev. Stats.*, 605, §§ 78, 79.) Appeals from final decrees were to be made within two years from enrolment, subject to the same exceptions as to persons under disability as in cases of writs of error, and appeals from any other order within fifteen days.

And the regulation of appeals from a vice-chancellor to the chancellor was also made by statute. (2 *Rev. Stats.*, 178, § 65.)

I deduce from this review two conclusions: one, that all restrictions upon the right of appeal are to be strictly construed; another, and more important, that any relaxation of such restrictions is to be liberally interpreted.

By the light of these principles the Code is to be examined. We notice, first, that the whole doctrine of exceptions, by reason of a disability, is disregarded. The prescription seems peremptory for all suitors.

In the next place, as the Code stood in 1848, the provision

was only that which we now find in section 173, with unimportant variations of language.

The new clause of 1849 added the provision which now forms section 174. In it we find the direction that the court may, in its discretion, allow an answer or reply to be made, *or other act to be done*, after the time limited by this act, or by any order enlarge such time; and may also, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, release a party from a judgment, order, or other proceeding taken against him through mistake, inadvertence, surprise, or excusable neglect.

Thus, then, a judgment may be relieved against within a year, for excusable neglect; and yet we are to hold that the power of reversing that judgment, under any circumstances whatever, after the expiration of thirty days, exists nowhere ; not even when that appeal is from one judge to other judges of the same court. With the most indulgent provisions for every other imaginable case, this important common-law inherent right is. bounded by a period very brief in duration, and by a rule most stringent in application.

It has been urged that an appeal is a new action. With respect, I regard this position as clearly indefensible. Some of my reasons are stated in Seely *a.* Pritchard. But if an appeal from an inferior to a superior tribunal could by possibility be so considered, I am unable to find a shadow of plausibility of treating a review by judges of the same court, of the decisions of one of them, as of that nature.

It is urged that the court might as well assume the power of authorizing the commencement of action after the expiration of the periods fixed in title 2 of the Code. The answer appears to me to be, that section 174 cannot, without the wildest latitude of construction, be considered as applying to any act, except such as attend and can be taken in the progress of a cause after its commencement.

It has been insisted that by just reasoning such a power would extend to permit exceptions to the ruling of a judge at a trial, to be taken after the trial. The answer seems to me sufficient that the time to do that is not prescribed by the Code. It must, from the nature of things, be taken at the trial, and so section 264 declares; but this is not the prescription of a def-

inite period of days or other times, for doing an act contemplated in section 174.

It is strongly urged that whatever was comprised in the fresh provision of 1849, it could only be treated as relating to acts proper or necessary in a cause before judgment, and that the context appeared to establish this. This, perhaps, might sanction the exercise of the power when the appeal was to be from an order merely. But it seems to me a better and more comprehensive answer may be given. The provisions as to relieving from judgments contemplates grounds of relief distinct from the case as it stands, something extraneous ; not a review of the determination on the case as made out in the court below.

Besides, section 408 has provided for such a case, conferring the power even upon a single *judge* of the court, except as to an appeal. I draw an argument from this very section that the power was left to the court in cases of appeals.

That inconveniences, and possibly evils, may result from the possession of the power in question, may not be contested. They attend every exercise of a discretionary authority lodged in a court; and yet that authority is indispensable to justice in a multitude of instances. On the other hand, little experience or little thought is needed to perceive the numerous cases in which the plainest rights will be defeated, and the grossest injustice wrought, by the rigid construction of the Code upon this question.

I observe, in conclusion, that the case is of an appeal from an order denying a motion for a new trial, and the right of a judge of the court, in court, to extend the time for taking such an appeal. It is the decision on this point that I differ from.

My reasoning would equally support the power in case of a judgment of the special term sought to be appealed from. I say nothing upon the point of an appeal from the general term to the Court of Appeals.