to have been tried on that theory. The jury were left free to find negligence from the fact of the train running out to Bartow on the left hand track; and that was not permissible. In fact the charge did not inform the jury what act or omission they might find to be negligent, as a charge always has to. A mere legal essay does not suffice; a specific and concrete instruction as to the fact or facts on which, if found, negligence may be based, is requisite.

As the case is to be tried over, it is not amiss to say that the instruction to the jury at the defendant's request that the plaintiff was bound by the testimony of the engineer of the train for the reason that it called and examined him as a witness, was erroneous. A jury or court is not obliged to accept the evidence of a witness as true against a party for the reason that he was that party's witness. There is no such rule. The jury or court is free to discredit his evidence whoever called him. A trial is a search for the truth. A party is only bound by evidence which is found to be true, whether of his own witnesses or the other party's witnesses.

The judgment should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.

---

(128 App. Div. 151.)
### HODGINS v. BINGHAM, Police Com'r.

(Supreme Court, Appellate Division, Second Department. October 16, 1908.)

MUNICIPAL CORPORATIONS—OFFICERS—POLICE OFFICERS—REMOVAL.

Under Greater New York Charter (Laws 1901, p. 153, c. 466) § 354, authorizing the dismissal and the placing on the pension roll of a member of the police force disabled so as to be "unfitted or unable to perform full police duty," and section 357 (page 157), providing that no pension shall be awarded without a certificate of the police surgeons as to the cause and extent of the disability, a certificate that a member is unable to perform full police duty is sufficient to authorize his dismissal and the placing of his name on the pension roll.

Appeal from Special Term, Kings County.

In the matter of the application of William H. Hodgins for writ of mandamus against Theodore A. Bingham, as police commissioner of the city of New York. From an order allowing an alternative writ of mandamus requiring the police commissioner to restore relator to his place as captain of police, from which he was removed, on the ground that such removal was void, defendant appeals. Reversed.

Argued before JENKS, HOOKER, GAYNOR, RICH, and MILLER, JJ.

James D. Bell (James W. Covert, on the brief), for appellant.
A. S. Gilbert (Julius M. Mayer, on the brief), for respondent.

GAYNOR, J. The relator has been dismissed from the police force and put on the roll of the police pension fund by order of the police commissioner. The cases in which the commissioner is empowered to do this joint act in his discretion, and those in which he is required

to do it, i. e., the cases in which he may and those in which he must, are prescribed by the city charter. They are as follows:

1. He may in the case of a member of the force who is 55 years old and has performed duty on such force for 20 years, on the application in writing of such member.

2. He must in the case of a member of any age who has served for 20 years, upon a certificate of so many police surgeons as the commissioner shall require, showing that such member is permanently disabled, physically or mentally, so as to be "unfit for duty."

3. He must in the case of a member who has served on the force for 20 years and is 55 years old, on the application in writing of such member.

4. He must in the case of a member who is an honorably discharged soldier or sailor of the Civil War, who is 60 years old, on his application in writing.

5. He must in the case of a member, regardless of his age, who is such soldier or sailor, and who has served on the force for 20 years, on his application in writing.

6. He may in the case of a member who is not such a soldier or sailor who is 60 years old. Laws 1901, p. 154, c. 466, § 355.

7. He may in the case of any member who shall after 10 years of membership, but less than 25 years of membership, "become superannuated by age, permanently insane or mentally incapacitated, or disabled physically or mentally, so as to be unfitted or unable to perform "full police duty." Section 354, subd. 4.

The relator's case does not fit any of these enumerated cases except the last; the limitations and restriction of each, except of the last, exclude it.

The objection that the relator stands on is that the surgeons' certificate on which the commissioner acted is that he is unable to perform "full police duty," instead of "unfit for duty." But whereas the latter certificate is required by section 355 for the restricted cases there provided for (People ex rel. Metcalf v. McAdoo, 48 Misc. Rep. 420, 95 N. Y. Supp. 511; Id., 109 App. Div. 892, 96 N. Y. Supp. 868; Id., 184 N. Y. 268, 77 N. E. 17), the former is made sufficient by section 354 for the less restricted cases there provided for.

It is true that section 354 does not require any police surgeons' certificate, or provide for the method of ascertaining the disability, which might leave the commissioner free to act arbitrarily. But as section 357 provides that no member of the force shall be put on the roll of the pension fund for disability or disease without such a certificate setting forth the nature and extent thereof, that provision applies to and limits the action of the commissioner under section 354, for it is not an act of dismissal, but a joint act of dismissal and placing on the said roll.

It is not to be denied that these two sections are very involved, crude and unscientific in their language and construction, and not to be interpreted and co-ordinated without close scrutiny and difficulty. By being re-written and reduced to one quarter of their present length they could be made clear and consistent, which is the case with the charter

of the city of New York generally, as the courts are painfully aware. They would welcome a scientific arrangement and re-writing of it by the commission now sitting to revise it, for that would do away with a mass of litigation.

The order should be reversed.

Order reversed, with $10 costs and disbursements, and motion denied, with $10 costs. All concur.

---

(128 App. Div. 148.)

### GOTTLIEB v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, Second Department.   October 16, 1908.)

1. MORTGAGES—QUITCLAIM OF INTEREST IN LAND—EFFECT.
   A mortgagee, who quitclaims his interest in the land mortgaged, thereby assigns the mortgage to the grantee.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, § 612.]

2. SAME—FORECLOSURE—RIGHTS OF MORTGAGEE AS PURCHASER.
   Where a mortgagee quitclaimed his interest in the land to a third person, and then foreclosed the mortgage and purchased the premises at the foreclosure sale, the mortgagee acquired the premises as trustee for the third person.

Appeal from Special Term, Kings County.

Action by Louis Gottlieb against the city of New York and others. From a judgment for plaintiff, entered on a decision of the court after trial at Special Term, and from an order permitting an amendment to the complaint, defendant the city of New York appeals.   Affirmed.

The town of Gravesend, by its trustees of common lands, conveyed the land in question to the plaintiff in 1885. The town by the said trustees had already conveyed the same to another in 1884, and taken back a mortgage for part of the purchase money, which it held at the time of the conveyance to the plaintiff. In 1893 the said mortgage was foreclosed by the town by action and the town became the purchaser at the sale. This plaintiff was not made a party to such foreclosure.

The conveyance to the plaintiff was "all of the right, title, interest, ownership and estate" of the town, and there were no covenants against encumbrances, of seizin, warranty or further assurance.

This was originally an action in ejectment against the city of New York, the successor of the said town, which is in possession under the conveyance to it under the said foreclosure. On the trial (both sides having noticed it for trial at the Special Term) the complaint was amended to make it a suit in equity to have the plaintiff adjudged owner and require the city to convey to him.

Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.

James D. Bell (Jerome W. Coombs, on the brief), for appellant.
George H. Taylor, Jr., for respondent.

GAYNOR, J.   When the town conveyed to the plaintiff it did not own the land, but only a mortgage thereon.   The deed of conveyance was without covenants, but it operated to assign the mortgage to the plaintiff, and therefore the foreclosure of the mortgage by the city of New York (the successor of the town) and the purchase by the said city on the foreclosure for the amount due on the mortgage, must be